UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN RODRIGUEZ,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | Case No.: 16-cv-2806-CAB-DHB<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>**[Doc. Nos. 14, 15]** |

On November 15, 2016, Plaintiff Juan Rodriguez ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act requesting judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding the denial of Plaintiff's claim for disability benefits. [Doc. No. 1.] On March 31, 2017, Plaintiff filed a motion for summary judgment, requesting the Court reverse the Commissioner's final decision and order the payment of benefits, or, alternatively, remand the case for further proceedings. [Doc. No. 14.] On April 28, 2017, Defendant filed a cross-motion for summary judgment and an opposition to the Plaintiff's motion, requesting that the Court affirm the Commissioner's final decision. [Doc. No. 15.] For the reasons set for below, Plaintiff's motion for summary judgment is granted and Defendant's cross-motion for summary judgment is denied. The case is remanded to the ALJ for further proceedings consistent with this opinion.

**I.   Background**

On April 15, 2012, Plaintiff filed an application for disability and disability insurance benefits under Title II of the Social Security Act, alleging a disability beginning on September 13, 2007. [Administrative Record ("A.R.") at 217-18, 259.] After a denial at the initial determination [A.R. at 122) and a denial on reconsideration [A.R. at 139], Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ"). [*Id.* at 156-159.]

On February 17, 2015, a hearing was held on Plaintiff's claim before ALJ Howard Tremlin. [*Id.* at 59-86.] Plaintiff, who was represented by counsel, appeared and testified at the hearing. [*Id.*] Also appearing and testifying was a vocational expert. [*Id.*]

On April 30, 2015, the ALJ issued a decision denying Plaintiff's claim for benefits. [*Id.* at 29-38.] Applying the five-step, sequential-evaluation process for adjudication of disability claims, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015. [*Id.* at 32.] The ALJ also found that Plaintiff did not engage in substantial gainful activity during the period from the alleged onset date of September 13, 2007 through his date last insured of March 31, 2015. [*Id.* at 32.] Further, the ALJ concluded the Plaintiff's listed impairments, which consisted of "mild chrondromalacia; medial femoral condyle with early degenerative changes, left knee, status-post left knee arthroscopy with diminished extension; mild thoracic spondylosis with mild levoscoliosis; lumbar degenerative disc disease, with mild facet arthritis, L5-S1; and complaints of pain in the right hip and right knee" affected him more than minimally, but they did not meet or equal the severity of symptoms required under the medical listings. [*Id.* at 32-33.] Additionally, the ALJ held that Plaintiff had the residual functional capacity to perform light work, could occasionally lift 20 pounds, climb, kneel, and crouch, and could frequently lift 10 pounds, sit, stand, walk for six hours in an eight hour workday, and frequently stoop. [*Id.* at 33.] The ALJ also found that Plaintiff was capable of performing his past work as a gate guard. [*Id.* at 37.] Furthermore, the ALJ found that even upon application of grid rule 201.19, at sedentary exertion, the claimant was still not considered

disabled. [*Id*. at 37.] Ultimately, the ALJ concluded that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act from April 15, 2012 through March 31, 2015. [*Id*. at 38.]

On May 13, 2015, dissatisfied with the ALJ's decision, Plaintiff requested review with the Appeals Council. [*Id*. at 23-25.] On September 20, 2016, the Appeals Council denied Plaintiff's request for review thereby casting the ALJ's decision as the final decision of the Commissioner. [*Id*. at 1-7.]

Plaintiff commenced this action pursuant to 42 U.S.C. §§ 405(g). On March 31, 2017, Plaintiff filed the current motion for summary judgment. [Doc. No. 14.] On April 28, 3017, Defendant filed the cross-motion for summary judgment. [Doc. No. 15.] Both parties filed their briefs in opposition. [Doc. Nos. 16, 17.]

**II.     Legal Standards**

Under 42 U.S.C. section 405(g), courts review the ALJ's decision to determine whether substantial evidence supports the ALJ's findings and if they are free of legal error. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.1996); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir.1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards). The Commissioner's final decision should not be disturbed unless; (1) the ALJ's finding are based on legal error; or (2) the ALJ's determinations are not supported by substantial evidence in the record as a whole. *See Schneider v. Comm'r of Soc. Sec. Admin*, 223 F.3d 968, 973 (9th Cir. 2000).

The reviewing court must follow three important rules when analyzing an ALJ's decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). First, the court "leave[s] it to the ALJ to determine credibility, resolve conflicts in testimony, and resolve ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1098 (9th Cir. 2014). Second, the court should "disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Id.* (internal quotation marks and citation omitted). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valentine*

*v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). In determining if substantial evidence exists, courts must review the record as a whole and consider adverse as well as supporting evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.2006). Where evidence can reasonably be construed to support more than one rational interpretation, the ALJ's decision must be upheld. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882 (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.1989)); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.2007). Third, the court must uphold an ALJ's decision, even when the ALJ commits legal error if that error is harmless. *Trechler*, 775 F.3dd at 1099.

### III. Discussion

Specifically at issue here is the residual functional capacity determination made by the ALJ between steps three and four of the five step sequential evaluation process. Plaintiff asserts that when determining his residual functional capacity the ALJ failed to articulate specific, clear and convincing reasons for rejecting his testimony. [Doc. No. 14-1 at 4-10.] Defendant counters that, based on substantial evidence, the ALJ properly assessed Plaintiff's credibility. [Doc. No. 15-1 at 4-7.]

An ALJ engages in a two-step analysis in determining whether a claimant's testimony regarding subjective pain or symptoms is credible. *Molina v. Astrue*, 674 F.3d 1104. 1112 (9th Cir. 2012). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which would reasonable be expected to produce pain." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Second, "[i]f the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*

at 1014-1015. This requires the ALJ identify which testimony is not credible and what evidence undermines the claimant's complaints. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct. *See Turner v. Comm'r Soc. Sec. Admin*, 613 F.3d 1217, 1224-25 (9th Cir. 2010). The ALJ is required to consider a claimant's daily activities and may reasonably discount a claimant's subjective complaints where the claimant engaged in activities inconsistent with the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.927(c)(3); *Molina,* 674 F.3d at 1113. Where, as here, a Plaintiff has provided evidence of an underlying impairment, the ALJ may "reject the claimant's testimony about the severity of h[is] symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter,* 806 F.3d at 493 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Plaintiff alleges disability based on a number of knee, hip and spinal complaints.[1] Neither party disputes the ALJ's determination that Plaintiff has presented objective medical evidence of an underlying impairment which would reasonably be expected to produce pain. *See Garrison* 759 F.3d at 1014. Accordingly, the first prong of the *Garrison* analysis is satisfied. As a consequence, the Court must determine whether the ALJ provided specific, clear and convincing reasons for discrediting Plaintiff's testimony concerning his subjective pain that are supported by evidence in the record. The clear and convincing standard is "the most demanding required in Social Security cases" and "is not an easy requirement to meet." *Garrison,* 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

---

[1] Plaintiff's complaints include: mild chrondromalacia; medial femoral condyle with early degenerative changes, left knee, status-post left knee arthroscopy with diminished extension; mild thoracic spondylosis with mild levoscoliosis; lumbar degenerative disc disease, with mild facet arthritis, L5-S1; and complaints of pain in the right hip and right knee.

Here, the ALJ found that the functional limitations resulting from Plaintiff's impairments were not as intense, persisting and limiting as he alleged. [A.R. at 34.]. In so finding, the ALJ noted that Plaintiff's credibility was diminished because "those allegations are greater than expected in light of the objective evidence of record." [*Id*. at 35.] After making this determination the ALJ went on to summarize the medical evidence in the record but failed to tie a particular statement he found to be not credible to particular medical evidence.

Beginning in 2007, Plaintiff stopped working after he sustained a work-related injury to his left knee when he stepped on a container and twisted his knee when he was working at EDCO. On December 10, 2009, Plaintiff underwent a left knee diagnostic arthroscopy, left knee medial femoral condyle chondroplasty and left knee major synovectomy. [*Id*. at 442-43.] As the ALJ correctly summarized, Plaintiff testified that he has used a cane since his knee surgery in 2007 [*Id.* at 64]; he takes pain medication for pain in his knees, back and hips [*Id*. at 65]; he uses a cane to ambulate [*Id*. at 72.]; and Plaintiff reported that he cannot lift a gallon of milk [*Id.* at 68]. [*Id*. at 34.] Plaintiff also stated that he can sit for about ten to fifteen minutes and stand and walk ten to fifteen minutes. [*Id*. at 67-68.] Further, Plaintiff described his activities on a daily basis, including feeding his dogs and watering the plants. [*Id*. at 72]. Plaintiff also testified that he has difficulty getting dressed, needs help showering, and lies down four times a day for about thirty - forty-five minutes at a time. [*Id*. at 69, 75.] Additionally, Plaintiff asserted that he suffers from diabetes, sometimes feels dizzy and nauseous, has problems with his eyes, and utilizes back support and a knee brace on his left knee. [*Id*. at 65-67, 72.]

The ALJ identified a number of statements made by Dr. Harris in 2010 and 2011 that repeatedly recommended Plaintiff be placed on light work duty that consisted of sedentary work. [*Id*. at 34-35, 444-45, 571, 589-592, 640.] The ALJ also noted that in a November 23, 2010 re-examination report, Dr. Murphy concluded that Plaintiff continued to be permanent and stationary, and his work status remained light. [*Id*. at 35, 566-576.] In addition, the ALJ summarized the medical examiner's report submitted by Dr. Hall,

dated September 19, 2012, who recommended Plaintiff be fitted for a valgus unloading type brace; utilize a cane; use anti-inflammatory medications; and ice his knee. [*Id*. at 35, 639, 674-77.] The ALJ also cited the November 2, 2014 and January 12, 2015, treatment records from Borrego Centro Medico which indicate that Plaintiff was obese with a BMI of 31, a pre-diabetic who was not in acute distress, was not feeling tired or poorly, had no blurry vision, had no dizziness and was advised on diet and exercise. [*Id*. at 35, 683-85, 724-25.]

Further, the ALJ read and gave great weight to the findings within a pre-hearing consultative examination performed by Dr. Sabourin, a Board certified orthopedic surgeon, who evaluated Plaintiff on June 4, 2013. Dr. Sabourin determined that despite his conditions Plaintiff was not precluded from performing a significant range of light exertional capacity. [*Id*. at 624-629] After performing a physical examination Dr. Sabourin reported that Plaintiff had some disproportion in regards to the severity and duration of his complaints, had surgery on his left knee showing some chondormalacia, with some atrophy in the left leg and decreased range of motion, and also complained of back pain that Plaintiff related to a 1999 work-related injury that caused two discs to herniate. [*Id.*] Dr. Sabourin opined that Plaintiff was able to: occasionally lift and/or carry twenty pounds, climb kneel and crouch; frequently lift and/or carry ten pounds and stoop; sit, stand, and/or walk for six hours in an eight-hour workday; and that he did not need an assistive device to ambulate. [*Id.* at 628.] The ALJ also correctly noted that Dr. Sabourin reported that during the examination Plaintiff was:

> not fully cooperative during the exam, so there was uncertainty as to the exact degree of limitation he had and his feet were equally calloused; and the lumbar spine problems were not as severe as noted in the history when the x-rays were read by a second physician.

*Id*. at 36.

Similarly, the ALJ also read and gave great weight to the findings of consultative examiner, Dr. Moazzaz, a Board certified orthopedic surgeon who evaluated Plaintiff on

July 29, 2012. [*Id*. at 36-37.] The ALJ correctly summarized Dr. Moazzaz's finding that Plaintiff was not precluded from performing light exertional work, despite conditions of status-post left knee arthroscopy with diminished extension and degenerative disc disease. [*Id*. at 37, 611-617.] Dr. Moazzaz found that Plaintiff presented with a history of low back, left knee pain, and degenerative changes of the lumbar spine, was lacking range of motion of the left knee following two arthroscopies, but had an intact neurological exam with a negative straight leg raise test. [*Id*. at 611-614.] Dr. Moazzaz opined that Plaintiff was: able to lift and/or carry twenty pounds occasionally and ten pounds frequently; sit, stand, and/or walk for six hours in an eight-hour workday; occasionally bend, kneel, stoop, crawl and crouch; not subject to restrictions with overhead activities and could fully use his hands for fine and gross manipulative movements; and did not need an assistive device to ambulate. [*Id*. at 615.]

However, "although the ALJ summarized a significant portion of the administrative record in support of h[is] RFC determination" he did not provide "clear and convincing reasons for finding the claimant's symptom testimony not credible." *Brown-Hunter,* 806 F.3d at 494. Here, the ALJ determined that:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

A.R. 34. After stating his non-credibility conclusion and summarizing the medical evidence, the ALJ did not specifically identify which of Plaintiff's statements he did not find credible and why, nor did he explain what evidence in the record undermines Plaintiff's complaints. *See Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient, rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("the ALJ must specifically identify the testimony she or he finds not be credible and must explain what evidence undermined the testimony").

This is precisely the type of general conclusory statement that the Ninth Circuit has held to be insufficient. *See, e.g., Treichler*, 775 F.3d at 1102 (holding that the ALJ erred by making only a "single general statement that 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."); *Brown-Hunter*, 806 F.3d at 493-494 (holding ALJ's general statement that "she found, based on unspecified claimant testimony and a summary of medical evidence, that "the functional limitations from the claimant's impairments were less serious than she has alleged" insufficient because they failed to identify which of claimants statements are she found to be not credible and why). While it could be inferred that the specific portions of the medical records identified by the ALJ were the contradictory evidence and conclusions he used in making his determination, this is not enough. Rather, the ALJ is required to connect the contradictory evidence to specific statements made by Plaintiff; by not doing so he has failed to provide the basic information necessary to ensure meaningful judicial review. Thus, the Court finds the ALJ committed legal error because he "failed to identify the testimony []he found not credible, []he did not link that testimony to the particular parts of the record supporting h[is] non-credibility determination." *Brown-Hunter,* 806 F.3d at 494.

Further, the Court finds that the error was not harmless. After rejecting Plaintiff's limitation testimony and assessing Plaintiff's residual functioning capacity almost exclusively on the medical records, the ALJ concluded that Plaintiff was capable of performing light work. But, a hypothetical the ALJ posed to the Vocational Expert is evidence that a different disability conclusion may have been reached had Plaintiff's testimony been considered. After being presented with a hypothetical that somewhat mirrored Plaintiff's testimony, the Vocation Expert concluded that under such circumstances the past work of gate guard or other work could not be performed. [A.R. 83.] Therefore, this Court cannot find the error was harmless, because it cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could

9

16-cv-2806-CAB-DHB

have reached a different disability determination." *Stout v. Comm'r,* 454 F.3d 1050, 1055-56 (9th Cir. 2006).

## IV. Remedy

The Court next addresses the question of remedy. The Court can either remand for further proceedings, or remand for an award of benefits. Because Plaintiff's entitlement to benefits is not clearly established on the present record, remand for further proceedings is therefore appropriate.

"A district court may 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal quotation marks and citation omitted). In order to remand a case for an award of benefits a district court must conclude "that further administrative proceedings would serve no useful purpose." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (discussing *Garrison*, 759 F.3d).[2] However, "a reviewing court is not required to credit claimant's allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Dominguez,* 808 F.3d at 408 (quoting *Treichler, 775* F.3d at 1106). *See also Burrell,* 775 F.3d at 1141 ("[W]e may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.") (internal quotation marks and citation omitted); *Connett v. Barnhart,* 340 F.3d 871, 874-76 (9th Cir. 2003) (finding that a reviewing court retains discretion to remand for further proceedings even when the ALJ fails to assert specific facts or reasons to reject [the claimant]'s testimony").

---

[2] A district court may remand directly for an award of benefits only when: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence was credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

Here, remand for further proceedings is appropriate because the Court is unable to conclude that the record is "free from conflicts, ambiguities [and] gaps" and that Plaintiff's "entitlement to benefits is clear." *Treichler,* 755 F.3d at 1103-04. Although the ALJ's generalized conclusion was erroneous, he may, with or without further development of the record, be able to sufficiently identify and articulate which of Plaintiff's statements he finds not credible and link the statements to the portions of the evidentiary record that demonstrate the inconsistencies.

## V. Conclusion

For the reasons discussed above, the Court finds that although the administrative record may support the ALJ's conclusion, he has failed to provide the necessary reasoning in support of his credibility determination. Accordingly, the Court **GRANTS** Plaintiff's motion for summary judgment. Defendant's cross-motion for summary judgment is **DENIED**.

It is therefore ORDERED that the final decision of the Commissioner of Social Security is reversed and the case is **REMANDED** for further proceedings and additional explanation.

It is **SO ORDERED**.

Dated: August 11, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge

11
16-cv-2806-CAB-DHB